UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ELI LILLY AND COMPANY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO. 1:03-cv-1504-DFH-TAB ) |
| EMISPHERE TECHNOLOGIES, INC., | ) ) ) |
| Defendant. | ) |

ENTRY ON EMISPHERE'S MOTION FOR RELIEF

On January 6, 2006, the court issued its findings of fact and conclusions of law on the issues that were tried to the court. *Eli Lilly and Co. v. Emisphere Technologies, Inc.*, 408 F. Supp. 2d 668 (S.D. Ind. 2006). Plaintiff Eli Lilly and Company and defendant Emisphere Technologies, Inc. had been engaged in a research collaboration on possible use of Emisphere's "carrier" molecules to achieve oral delivery of several therapeutic proteins. The court found that Lilly had breached two contracts and that Emisphere was entitled to terminate those contracts as of August 23, 2004. On April 6, 2006, the court granted in part and denied in part Lilly's motion to amend findings and conclusions.

Now pending is Emisphere's motion for permanent injunctive relief ordering Lilly to assign to Emisphere the oral GLP patent application, WO 03/072195, that Lilly filed with the World Intellectual Property Organization on or about

February 20, 2002 (Ex. 39), including any final patents that may be issued as a result of that application. The court's factual findings and legal conclusions establish the basis for such relief. The court found after trial that Lilly's continuing refusal to assign the oral GLP patent application to Emisphere violated the second sentence of Section 1.5(c) of the parties' second Research Collaboration and Option Agreement (known as "RCOA II"):

> It will not be Lilly's responsibility or intent to develop new synthetic chemical compounds that enable the delivery of therapeutic macromolecules and other compounds that are not currently deliverable by oral means or by certain non-oral means (the "Carriers") as part of the Programs. Any new Carriers or inventions which are closely related to the Emisphere Technology (as it exists as of the Effective Date) that arise, in whole or in part, out of suggestions, recommendations or discussions held between Emisphere and Lilly scientists shall be Emisphere Technology.

Ex. 4, § 1.5(c). The oral GLP patent application for use of Emisphere's proprietary carrier with GLP claims new inventions that are "closely related to Emisphere Technology as it existed on the effective date." 408 F. Supp. 2d at 681. The court also made detailed findings of fact and conclusions of law to the effect that the Lilly patent application on use of GLP with Emisphere's proprietary carriers arose "in whole or in part, out of suggestions, recommendations or discussions held between Emisphere and Lilly scientists." *Id.* at 681-85. Thus, the oral GLP patent application must be deemed "Emisphere Technology."

Lilly argues that the request for relief is premature, but the court disagrees. Lilly argues that Emisphere is seeking specific performance, and that under governing New York law, Emisphere must show "(1) there is a valid contract; (2)

plaintiff has substantially performed under the contract and is willing and able to perform its remaining obligations; (3) defendant is able to perform its obligations; and (4) plaintiff has no adequate remedy at law." *RJE Corp. v. Northville Industries Corp.*, 198 F. Supp. 2d 249, 270 (E.D.N.Y. 2002). If that showing is made, the party seeking specific performance must show that the balance of equitable factors weighs in its favor. *Id.*, citing *Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*, 992 F.2d 430, 433 (2d Cir. 1993). In *RJE Corp.*, the court was not dealing with a comparable breach of contract, but was resolving a disagreement about the meaning of certain contract terms. The court declined to order specific performance in the form of a bidding process to divide the parties' interest in a joint venture. The court relied on three factors that are not present here. The parties' contract had provided that specific performance might be subject to equitable defenses; the losing party had acted in good faith; and the party seeking specific performance had suffered only incidental losses that could easily be compensated with money. 198 F. Supp. 2d at 270-71.

The situation here is entirely different. First, rather than providing explicitly that specific performance would be subject to equitable defenses, RCOA II contained detailed provisions concerning ownership of intellectual property in general and patent applications in particular. Those provisions assumed that the parties each complied with their contractual obligations. Section 1.5(b) provided that "Emisphere shall own all patents, patent applications and Know-How relating to the Emisphere Technology to the extent that Lilly and/or Emisphere invents

-3-

and/or develops same during the course of and as part of the Programs, including, but not limited to, any Lilly Improvements." The contract defined "Lilly Improvements" to include "an improvement to Emisphere's then-existing Emisphere Technology made by a Lilly employee as part of the Program." Ex. 4, § 1.5(d). The "Programs" were defined as the joint research on PTH and hGH. *Id.*, § 1.1.

Thus, even if Lilly had not breached RCOA II and had filed the oral GLP patent application, Emisphere would be entitled to ownership of the patent application. See 408 F. Supp. 2d at 685 n.5. Whether the work that led to the oral GLP patent application is deemed a part of the parties' "Programs" or not, the terms of the RCOA II provide that the claimed inventions are "Emisphere Technology." The only fair reading of the contract is that the parties agreed that Emisphere would own patent applications for Emisphere Technology. Those detailed provisions clearly indicate that the parties intended that equitable relief would be appropriate to resolve disputes about the ownership of intellectual property. Neither party wanted to be limited to only a damages remedy if the other misappropriated its intellectual property.

Second, there is no adequate remedy at law here. The consequences to Emisphere of leaving Lilly in control of the oral GLP patent application would threaten Emisphere's whole business model for exploiting its carrier technology. That model is the use of exclusive but limited licensing arrangements with

different partners. 408 F. Supp. 2d at 685-86. Without injunctive relief, Lilly presumably would be in a position to exploit the invention itself and to license the Emisphere technology to others. The result would be that, as a result of Lilly's breach of contract, Emisphere would lose effective control of its proprietary carrier technology. It would be highly unfair to leave Lilly in control of the oral GLP patent application and to relegate Emisphere to a mere damages remedy as it watches from the sidelines while Lilly controls and exploits inventions the parties agreed would be "Emisphere Technology."

Third, in terms of other relevant equitable factors, the court cannot say that Lilly was acting in good faith as it pursued its secret research project, excluding Emisphere, while still claiming at trial that the Oral Protein Delivery Team was working as part of the parties' "Programs" in furtherance of the joint research venture. See 408 F. Supp. 2d at 685, 690, 694.

Lilly argues that the court should wait until it has given "full consideration of all factors pertinent to whether such coercive relief is appropriate." Lilly has not identified any additional factors that require such consideration. From the court's perspective, the situation here is straightforward. Back when the parties entered into RCOA II in 2000, Lilly agreed that inventions like the oral GLP patent application would be "Emisphere Technology." Denial of equitable relief would further compound Lilly's breaches that led to the oral GLP patent application. There is no apparent basis for denying such relief.

Lilly has stated it intends to appeal the court's decision, though timing remains uncertain. The court recognizes that there are colorable arguments that could be presented on appeal, and no patent has actually issued yet. Accordingly, the court believes the most appropriate course here is: (1) to issue a permanent injunction ordering Lilly to assign to Emisphere the oral GLP patent application and any patents that may result from it, (2) to stay that injunction for a brief period (14 days) to give Lilly an opportunity to file a notice of appeal pursuant to 28 U.S.C. § 1292(a)(1) (authorizing interlocutory appeals of injunctions), and (3) if Lilly does appeal, to stay the permanent injunction pending resolution of that appeal or other developments warranting a change in circumstances.

Whether to issue a stay pending appeal requires the court to consider whether the party seeking the stay has demonstrated that: (1) it has a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm if it is denied; (4) the irreparable harm the party will suffer without relief is greater than the harm the opposing party will suffer if the stay is granted; and (5) the stay will be in the public interest. *Hinrichs v. Bosma*, 440 F.3d 393, 396 (7th Cir. 2006) (affirming denial of stay); *Kiel v. City of Kenosha*, 236 F.3d 814, 815-16 (7th Cir. 2000) (same); *Books v. City of Elkhart*, 239 F.3d 826 (7th Cir. 2001) (Ripple, J., in chambers) (granting stay where court had ordered a permanent change in the status quo that could not easily be undone).

On the merits, the court believes Lilly's likelihood of success on appeal is not high. For these purposes, however, the court must assume that its decision on the merits might be wrong. Lilly has colorable arguments to present on appeal. In terms of deciding on a stay pending appeal, the key consideration is that if this court's decision is wrong, immediate implementation of the permanent injunction ordering assignment of the oral GLP patent application would cause avoidable confusion and entanglements. The court does not believe that Emisphere will suffer further irreparable harm while the appeal proceeds. The balance of harms and equities appears to favor finding a final resolution of the issue before the court's order is actually implemented.

Accordingly, the court will enter a separate permanent injunction that will not take effect prior to May 5, 2006, and that will be deemed stayed without further action if Lilly files a notice of appeal no later than May 3, 2006. If either party believes these issues need further refinement or consideration at the district court level, they should bring the matter promptly to the court's attention with an appropriate motion.

So ordered.

Date: April 25, 2006

_David F. Hamilton_
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Erin Roth Bohannon
BARNES & THORNBURG LLP
erin.bohannon@btlaw.com

Bruce E. Fader
PROSKAUER ROSE LLP
bfader@proskauer.com

Helen K. Geib
BARNES & THORNBURG LLP
helen.geib@btlaw.com

Steven H. Holinstat
PROSKAUER ROSE LLP
sholinstat@proskauer.com

Donald E. Knebel
BARNES & THORNBURG LLP
donald.knebel@btlaw.com

Dwight D. Lueck
BARNES & THORNBURG
dwight.lueck@btlaw.com

Michael Rabinowitch
WOODEN & MCLAUGHLIN LLP
mrabinowitch@woodmaclaw.com

Aliza Ross
PROSKAUER ROSE LLP
aross@proskauer.com

Colin A. Underwood
PROSKAUER ROSE LLP
cunderwood@proskauer.com

Maureen E. Ward
WOODEN & MCLAUGHLIN LLP
mward@woodmaclaw.com

Hongsun Yoon
BARNES & THORNBURG LLP
hongsun.yoon@btlaw.com